## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **M. KATHLEEN McKINNEY, Regional Director of Region 15 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,** )<br>)<br>)<br>)<br>) | |
| ) | **No.** |
| **Petitioner** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **HORSESHOE BOSSIER CITY HOTEL & CASINO** )<br>) | |
| ) | |
| **Respondent** ) | |

---

## PETITION FOR TEMPORARY INJUNCTION PURSUANT TO SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT

---

To the Honorable Judges of the United States District Court for the Western District of Louisiana:

Comes now M. Kathleen McKinney, Regional Director of Region 15 of the National Labor Relations Board (the Board), and petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act (the Act) [61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)], for appropriate injunctive relief pending the final disposition of the matters involved herein pending before the Board, based upon an administrative complaint of the General Counsel for the Board, alleging that Horseshoe Bossier City Hotel & Casino (Respondent), has engaged in, and is engaging in, acts and conduct in violation of Section 8(a) (1) and (3) of the Act, [29 U.S.C.§§ 158(a)(1)], which, among other things, prohibits employers from discharging employees for engaging in union and protected concerted activities for the purpose of mutual aid and protection.

In support of this Petition, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of the Fifteenth Region (Region 15) of the Board, an agency of the United States Government, and files this Petition for and on behalf of the Board, which has authorized the filing of this Petition.

2.      Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act, [29 U.S.C. § 160 (j)], which provides, *inter alia,* that the Board shall have power, upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States District Court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.

3.      At all times material herein, Respondent, a corporation with an office and place of business in Bossier City, Louisiana, has been engaged in this judicial district in the operation of a hotel and casino.

4.      On or about the dates set forth below, the International Union, United Automobile, Aerospace & Agricultural Implement workers (UAW) (the Union), filed with the Board charges and amended charges indicated in subparagraphs (a) through (e), on the dates indicated, pursuant to the provisions of the Act, as follows:

(a) The original charge in Case 15-CA-215656 was filed on February 28, 2018. The charge was later amended on March 6, 2018, alleging Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. (Copies of the original charge and amended charges are attached hereto as **Exhibits PX-A and PX-B**).

(b) The original charge in Case 15-CA-216517 was filed on March 13, 2018. The charge was later amended on April 4, 2018, April 23, 2018, June 28, 2018, July 23, 2018, and September 19, 2018, alleging Respondent engaged in, and is engaging in, unfair labor practices

within the meaning of Section 8(a)(1) and (3) of the Act. (Copies of the original charge and amended charges are attached hereto as **Exhibits PX-C, PX-D, PX-E, PX-F, PX-G, and PX-H**).

(c) The original charge in Case 15-CA-217795 was filed on April 4, 2018. The charge was later amended on June 25, 2018, and July 23, 2018, alleging Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. (Copies of the original charge and amended charges are attached hereto as **Exhibits PX-I, PX-J, and PX-K**).

(d) The original charge in Case 15-CA-217797 was filed on April 4, 2018. The charge was later amended on April 5, 2018, April 23, 2018, June 26, 2018, July 31, 2018, and August 30, 2018, alleging Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. (Copies of the original charge and amended charges are attached hereto as **Exhibits PX-L, PX-M, PX-N, PX-O, PX-P, and PX-Q**).

(e) The charge in Case 15-CA-218097 was filed on April 10, 2018, alleging Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. (Copy of the charge is attached hereto as **Exhibit PX-R**).

5.      The charges in Cases 15-CA-215656, 15-CA-216517, 15-CA-217795, 15-CA-217797, and 15-CA-218097 were referred to Petitioner as Regional Director of Region 15 of the Board for investigation.

6.      Following a full investigation during which all parties were given an opportunity to submit evidence and legal arguments concerning the allegations raised in the charges outlined above, the Petitioner determined there is reasonable cause to believe, as alleged in the charges, that Respondent engaged and is engaging in unfair labor practices in violation of Section 8(a)(1) and (3) of the Act.

On June 29, 2018, the  General Counsel of the Board (the General Counsel), on behalf of the Board, by Petitioner, issued a Complaint and Notice of Hearing (Complaint) against Respondent pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], alleging Respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a)(1) of the Act [29 U.S.C. 158(a)(1)]. (A copy of the Complaint is attached as **Exhibit PX-S).** Respondent filed its Answer to the Complaint on July 12, 2018. (A copy of the Answer is attached as **Exhibit PX-T**). The Petitioner issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing (Consolidated Complaint) on July 31, 2018. (A copy of the Consolidated Complaint is attached as **Exhibit PX-U**). Respondent filed its Answer to Order Consolidating Cases, Consolidated Complaint and Notice of Hearing on August 14, 2018.  (A copy of the Answer is attached as **Exhibit PX-V**). The Petitioner issued an Order Further Consolidating Cases, Second Consolidated Complaint and Notice of Hearing (Second Consolidated Complaint) on September 28, 2018. (A copy of the Second Consolidated Complaint is attached as **Exhibit PX-W**). The Petitioner issued an Order Setting Hearing Date on October 4, 2018. (A copy of the Order is attached as Exhibit X). Respondent filed its Answer to the Order Further Consolidating Cases, Second Consolidated Complaint on October 15, 2018. (A copy of the Answer is attached as **Exhibit PX-Y**). An evidentiary hearing is scheduled to open on December 4, 2018, before an Administrative Law Judge on the allegations in the Second Consolidated Complaint.

7.      Petitioner avers there is reasonable cause to believe the allegations set forth in the Second Consolidated Complaint involving Cases 15-CA-215656, 15-CA-216517, 15-CA-217795, 15-CA-217797, and 15-CA-218097 are true and Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act, and affecting commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. § 152(6) and (7)]. More

particularly as set forth below in paragraphs 9(a) through 9(v), there is a strong likelihood of success in proving that:

(a)    Respondent violated Section 8(a)(1) of the Act by (1) disparately applying off-duty access, no solicitation, no-distribution, and name tag policies to restrain employees' exercise of Union activity, (2) unlawfully interrogating employees about their support for the Union, (3) soliciting employee grievances and implying such grievance would be rectified to restrain exercise of Union activity, (4) granting, rescinding, and threatening to rescind benefits to restrain exercise of Union activity, and (5) giving employees the impression their Union activities were under surveillance.

(b)    Respondent violated Section 8(a)(1) and (3) of the Act by (1) discharging or otherwise discriminating against Judy Murduca because she engaged in Union and concerted activities for the purpose of mutual aid and protection, (2) granting employees their birthdays off in response to protected Union activity, (3) as punishment discriminatorily altering work schedules of employees in response to their protected Union activity, and (4) as punishment not allowing dual-rate dealer employees to bid on other full-time dealer positions in response to employees' protected Union activity.

8.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, a true copy of the charges, the Complaints, Respondent's Answers to the Complaints, the Order Rescheduling Hearing, are attached and marked as **Exhibits PX-A through PX-Y**, and are incorporated as though fully set forth.

9.    In support of the Petition, and the request for injunctive relief herein, documentary evidence and affidavits are attached hereto as **Exhibits PX-Z through PX-LL.** Petitioner, upon information and belief, shows as follows:

(a)     At all material times, Respondent has been a corporation with an office and place of business in Bossier City, Louisiana (Respondent's facility), and has been engaged in the business of operating a hotel and casino.

(b)     In conducting its operations described above in paragraph 9(a), Respondent, annually, derived gross revenues in excess of $500,000.

(c)     During the period of time described above in paragraph 9(a), Respondent purchased and received at its Bossier City, Louisiana facility goods, and materials valued in excess of $5,000 directly from points outside the State of Louisiana.

(d)     At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act [29 U.S.C. § 152(2), (6) and (7)].

(e)     At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

(f)     At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | |
|---|---|
| Monica Antwine | Pencil |
| Rob Brown | Director of Hotel Operations |
| Roger Dodds | Director of Operations |
| James LaFleur | Assistant Casino Operations Manager |
| Trent MacIntosh | Assistant General Manager |
| Mike Rich | Senior Vice President/General Manager |
| Vicki Strickland | Floor Supervisor |
| Ashley Wade | Regional Vice President of Human Resources |

| Jason Williams | Assistant Operations Shift Manager |
| Kevin Yetman | Swing Shift Supervisor |

(g)     At all material times, Stephanie Lambert held the position of Respondent's Centralized Scheduling Coordinator and has been an agent of Respondent within the meaning of Section 2(13) of the Act.

(h)     Since about February 27, 2018, Respondent has maintained the following rule:

Our guests have priority in using our facilities. Off duty Team Members are welcome to visit the property as a guest, preferably during non-peak business hours.
- Visits are permitted as long as you are not in uniform.
- Team Members may visit public lounges, restaurants, casino and other public areas while off duty. When using any of the facilities as a guest you must remain in public areas and may not enter back of house or Team Member areas.
- Even though off duty, you are expected to conduct yourself in a manner consistent with the Conduct Standards.
- Please ensure you review the Gambling policy (below) prior to visiting the property.
- Team Members may drink alcohol responsibly and in moderation when visiting as a guest, out of uniform.
- CAFETERIA / EMPLOYEE DINING ROOM (EDR): Team Member cafeterias and lounges are for Team Members only on scheduled working days, from one hour before to one hour after their shift. Off duty Team Members are not allowed in back of house areas, unless attending work-related functions being held in those areas (for example, Company-sponsored biometric screenings) or attending to personal work-related matters (for example, visiting Human Resources).

(i)     About February 27, 2018, Respondent, by Mike Rich and Rob Brown, enforced the rule described in paragraph 9(h) selectively and disparately by:

(i)     applying it only against employees who formed, joined, or assisted the Union.

(ii)     prohibiting employee union solicitations and distributions, while permitting nonunion solicitations and distributions.

(j)    At all materials times, Respondent has maintained the following rule:

Solicitation or distribution of any literature at any time for any reason or cause by people who are not Team Members of the Company is prohibited on Company premises, including building interiors, parking lots, driveways, or other Company property. Team Members will not solicit or distribute any literature during working time or the working time of the Team Member(s) to whom the solicitation is directed. Team Members will not physically distribute flyers, pamphlets, papers, notices, or similar types of literature at any time in any working areas or during the working time of the Team Member who is doing the distributing or the working time of the Team Member(s) to whom the distribution is directed. Solicitation is not prohibited if it occurs during the non-working time of the Team Member doing the solicitation and the non-working time of the person being solicited. Physical distribution is not prohibited in non-working areas during non-working times. As used in this policy, "working time" does not include break periods, meal periods or other specified periods where Team Members are not scheduled to be performing their duties. As used in this policy, "working areas" does not include the Employee Dining Room, locker areas, designated break areas, and other areas where Team Members regularly take meal and rest breaks. Team Members may not sell anything for any purpose on property. The Company may approve limited exceptions to this policy for charitable activities. This policy does not apply to Company-sponsored activities that are directly related to our Team Member benefits programs. Team Members may not post or remove notices, signs, memoranda, or writings in any form on a bulletin board or Company property.

(k)    About February 27, 2018, Respondent, by Mike Rich and Rob Brown, enforced the rule described in paragraph 9(j) selectively and disparately by:

(i)    applying it only against employees who formed, joined, or assisted the Union.

(ii)    prohibiting employee union solicitations and distributions, while permitting nonunion solicitations and distributions.

(l)    At all materials times, Respondent has maintained the following rule:

Name Badges/Tags: Name badges must be worn at all times while on duty (on upper left side of shirt/blouse/jacket unless otherwise specified in department). Name badges/tags and badge holders must be clearly visible and unaltered; nothing may be attached to or affixed to name badge/tags or badge holders unless authorized by the Company or allowed by law.

(m)    About March 24, 2018, Respondent, by Roger Dodds and James LaFleur, enforced the rule described in paragraph 9(i) selectively and disparately by:

8

(i)      applying it only against employees who formed, joined, or assisted the Union.

(ii)     prohibiting employees from wearing Union buttons on their name badges, while permitting nonunion buttons and items to be worn on employee name badges.

(n)      About February 28, 2018, Respondent, by Roger Dodds, at Respondent's facility:

(i) Interrogated its employees about their union membership, activities, and sympathies and the union membership, activities, and sympathies of other employees.

(ii) Solicited its employees grievances and implied Respondent would remedy such grievances to discourage support for the Union.

(iii) Promised its employees they would be granted their birthdays off from work to discourage support for the Union.

(iv) Threatened its employees with not being able to swap their hours and days off with other employees if they selected the Union as their bargaining representative.

(o)      Respondent, by Mike Rich, at Respondent's facility:

(i) About March 1, 2018, threatened its employees with losing Respondent's open-door policy if they selected the Union as their bargaining representative.

(ii)     About March 2, 2018, threatened its employees with not being able to ask Respondent for days off if they selected the Union as their bargaining representative.

(p)      About mid-March 2018, a more specific date currently unknown to the General Counsel, Respondent, by Roger Dodds, at Respondent's facility:

(i)      Told dual rate dealers they would have an opportunity to be full-time dealers to discourage union activity.

(ii) Implied to employees that their union activities were under surveillance by Respondent by telling employees Respondent was aware of the level of employee support for the Union.

(iii)   Solicited employee complaints and grievances and implied Respondent would improve terms and conditions of employment if the employees would not support the Union.

(q)   About March 17, 2018, Respondent, by Roger Dodds, at Respondent's facility:

(i) Threatened its employees with a loss of personal time off (PTO) if they selected the Union as their bargaining representative.

(ii)   Promised its employees they would be allowed to bid on full-time dealer positions to discourage support for the Union.

(r)   About March 24, 2018, Respondent, by Roger Dodds, told dual rate dealers they could not bid on regular full-time dealer positions to discourage union activity.

(s)(1)   About March 1, 2018, Respondent began granting employees their birthday off from work.

(2)   Between about March 3, 2018 and April 28, 2018, Respondent assigned Virginia Burge, Jozette Butler, Donald Lewis, William Rankin, Drew Reno, and Tasha Simmons to work on their scheduled Saturdays off.

(3)   About mid-March 2018, a more specific date currently unknown to the General Counsel, Respondent began allowing part-time dealers to bid on full-time dealer positions.

(4)   Since about March 24, 2018, Respondent has refused to allow dual rate dealers to bid on regular full-time dealer positions.

(5)   About April 7, 2018, Respondent discharged its employee Judy Murduca.

(6) Respondent engaged in the conduct described above in paragraphs s(1) through s(5) because the named employees of Respondent formed, joined, and assisted the Union and engaged in concerted activities.

(7) Respondent engaged in the conduct described above in paragraphs s(1) through s(5) because Respondent believed the named employees formed, joined, and assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(t)     By the conduct described above in paragraphs 9(h) through 9(r), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

(u)     By the conduct described above in paragraphs s(1) through s(5), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

(v)     The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

10(a) Petitioner has reasonable cause to believe that by the conduct described in paragraphs 9(h) through 9(r), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(a)(1) of the Act, and these unfair labor practices affect commerce within the meaning of Section 2(6) and (7) of the Act.

(b) Petitioner has reasonable cause to believe that by the conduct described in paragraphs 9(s)(1) through 9(s)(7), Respondent has been discriminating in regard to the hire or tenure or conditions of employment of its employees, thereby discouraging membership in a labor

organization in violation of Section 8(a)(1) and (3) of the Act, and these unfair labor practices affect commerce within the meaning of Section 2(6) and (7) of the Act.

11.    The unfair labor practices of Respondent described above in paragraph 9 took place within this judicial district.

12(a)   Petitioner is likely to succeed in proving that by the conduct set forth in paragraphs 9(h) through 9(r), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

(b) Petitioner is likely to succeed in proving that by the conduct set forth in paragraphs 9(s)(1) through 9(s)(7), Respondent has been discriminating in the hire or tenure or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

13.    Upon information and belief, it may be fairly anticipated that, unless enjoined, Respondent will continue to engage in the conduct set forth in paragraphs 9(h) through 9(s), or similar or like acts in violation of Section 8(a)(1) and (3) of the Act. It is therefore necessary, just and proper that the effects of Respondent's acts and conduct be dissipated by remedial action on the part of Respondent so its employees can freely exercise the rights guaranteed them by the Act, and their rights not be impeded, impaired or hindered.

14.    Respondent's unfair labor practices, as described above in paragraphs 9(h) through 9(s), have and continue to substantially and irreparably harm employees of Respondent in the exercise of the rights guaranteed them by Section 7 of the Act.

15.    Upon information and belief, absent the interim relief sought in this petition, Respondent's acts and conduct described above will impede, and ultimately defeat, the most paramount provisions of the Act. Section 7 of the Act protects the rights of employees to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection .

. . ." 29 U.S.C. §157. Respondent's conduct herein strikes at the very principles which form the foundation of the Act and causes irreparable harm to the interests and statutory rights of employees and to the Board's remedial authority. Unless enjoined, Respondent's unlawful conduct may ultimately result in an irreparable loss of support for the Union, an injury which cannot be restored by a final Board order and/or subsequent Court judgment. Employees will continue to be deprived of their Section 7 rights to engage in concerted activities for their mutual aid or protection, thereby frustrating employees, now and in the future, in the exercise of the rights guaranteed them by Section 7 of the Act.

16.      Unless injunctive relief is immediately obtained, it may fairly be anticipated that Respondent will continue its unlawful conduct during the proceedings before the Board and during subsequent proceedings before a Court of Appeals for an enforcement decree, with the result being irreparable injury to employees because employees will continue to be deprived of their fundamental statutory right to engage in concerted activities for their mutual aid or protection as provided for in the Act. Unless Respondent is ordered to reinstate the unlawfully discharged employee and cease and desist from interfering with, restraining, or coercing employees in the exercise of their Section 7 rights, other employees at Respondent's facility will be irrevocably chilled from exercising their rights, the Union's organizing campaign will be destroyed, and the Board's final order will be meaningless. A serious flouting of the Act and of public policies involved in the Act will continue, with the result that enforcement of important provisions of the Act and of public policy will be impaired before Respondent can be placed under legal restraint through the regular procedures of a Board order and enforcement decree.

17.      The Petitioner believes in good faith here is a strong likelihood it will prevail on the administrative complaint and the remedy will require, *inter alia*, the Respondent to cease and desist from (a) disparately applying rules to employees engaged in union activity; (b) interrogating

13

employees about their union activities; (c) soliciting grievances from employees; (d) granting, promising, rescinding, and threatening to rescind benefits to interfere with protected rights; (e) implying union activity is under surveillance; (f)     changing hours and other conditions of employment based on an employee's exercise of protected rights; (g) suspending and discharging employees because of their  sympathies for and activities on behalf of the Union, and (h) in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act. Affirmatively, the remedy will require Respondent to (a) expunge the April 7, 2018 discharge from the personnel file of Judy Murduca; (b) offer, in writing, Judy Murduca full reinstatement to her former position or, if the position no longer exists, to a substantially equivalent position, without prejudice to her seniority or any other rights or privileges previously enjoyed, and displacing, if necessary, any worker hired, contracted for, or reassigned to replace her; (c) post a Notice at Respondent's Bossier City, Louisiana facility in all locations where notices to employees are customarily posted, free of all obstructions and defacements, and grant agents of the Board reasonable access to Respondent's facility to monitor compliance with this posting requirement; and (d) hold a mandatory meeting or meetings on paid working time at Respondent's facility, scheduled to ensure the widest possible audience, at which a responsible management official, in the presence of a Board Agent, will read the Notice to Employees in English.

18. In balancing the equities in this matter, the irreparable harm to the public interest and to the purposes and policies of the Act if injunctive relief is not granted, clearly outweighs any harm the granting of such injunctive relief will have on Respondent, particularly in light of the strong likelihood of Petitioner's success on the merits. The reinstatement of the terminated employee Judy Murduca will not pose a significant hardship on Respondent. Rather, Respondent will benefit from the labor of an experienced employee during the interim period. Moreover, reinstatement of the

terminated employee will restore the lawful status quo and will serve the public interest in protecting the right of employees to freely and fully support each other's protected, concerted efforts.

In sum, Respondent's unremedied unfair labor practices undermine employees' faith that they have the right to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. §157 and, without interim reinstatement of the terminated employee Judy Murduca, Respondent's current employees will be justifiably reluctant to exercise their right to engage in concerted activities for their mutual aid or protection.

19.    Upon information and belief, to avoid the serious consequences set forth above, it is essential, appropriate, and just and proper, for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and to former and current employees of Respondent, and in accordance with the purposes of Section 10(j) of the Act, that, pending the final disposition of the matters involved herein by the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, similar acts and conduct or repetitions thereof.

20.    No previous application has been made by Petitioner for the relief requested herein.

WHEREFORE, Petitioner prays:

1.    That this Court issue an Order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause, if any there be, why an injunction should not issue enjoining and restraining Respondent, its officers, representatives, supervisors, agents, employees, attorneys and all persons acting on its behalf or in participation with it, from engaging in the acts and conduct described above, similar or like acts, or other conduct in violation of Section 8(a)(1) and (3) of the Act, or repetitions thereof, and that the instant Petition be disposed of on the basis of the affidavits, submitted herewith, without oral testimony, absent further order of the Court.

2.       That this Court issue an Order directing Respondent, its officers, representatives, supervisors, agents, employees, attorneys, and all persons acting on its behalf or in participation with it, to cease and desist from the following acts and conduct, pending the final disposition of the matters involved herein by the Board:

(a) Discharging its employees, or otherwise discriminating against its employees, because they engage in Union and concerted activities for the purpose of mutual aid and protection.

(b) Granting employees their birthdays off to discourage protected Union activity.

(c) Discriminatorily altering work schedules of its employees, including Virginia Burge, Jozette Butler, Donald Lewis, William Rankin, Drew Reno, and Tasha Simmons, as punishment, in response to protected Union activity.

(d) Not allowing its employees classified as dual rate dealers to bid on other full-time dealer positions, as punishment, in response to protected Union activity.

(e) In any other manner, interfering with, restraining, or coercing employees in the exercise of their rights guaranteed them by Section 7 of the Act.

3.       That the Court further order Respondent, its officers, representatives, supervisors, agents, employees, attorneys and all persons acting on its behalf or in participation with it, to take the following affirmative action necessary to effectuate the policies of the Act pending the final disposition of the matters involved herein by the Board:

(a)       Within five (5) days of the issuance of the Court's Decision and Order, offer, in writing, immediate interim reinstatement to Judy Murduca to her former position with the Employer or, if such position no longer exists, to a substantially equivalent position, without prejudice to her seniority rights or privileges previously enjoyed by her, and displacing, if necessary, any newly hired or reassigned worker.

.

16

(b)     Within five (5) days of the issuance of the Court's Order, post copies of the Court's Order, at its Bossier City, Louisiana facility where notices to employees are customarily posted, said postings to be maintained during the pendency of the Board's administrative proceedings free from all obstructions and defacements.

(c)     Within ten (10) dajys of the Court's Order, require Respondent to:

(i) Hold a mandatory employee meeting or meetings at times when Respondent customarily holds employee meetings and scheduled to ensure the widest possible employee attendance, at which the Court's Order will be read to employees in English and in any other language deemed appropriate, by a responsible management representative in the presence of a Board Agent.

(ii) Announce the meeting for the Order reading in advance in the same manner it would customarily announce a meeting of employees.

(iii) Require all employees at the facility to attend the meeting.

(iv) Obtain the Region Director's prior approval for the time and date of the meeting(s) for the reading of the Court's Order and the Regional Director's approval of the content and the method of the announcement to employees of the reading of the Court's Order.

(v)     Within twenty (20) days of the issuance of the District Court's Opinion and Order, file with the Court, with a copy submitted to the Regional Director of the Fifteenth Region of the National Labor Relations Board, a sworn affidavit from a responsible official of the Respondent, setting forth with specificity the manner in which Respondent has complied with the terms of the Order.

4.      That, upon return of the Order to Show Cause, the Court issue an Order enjoining and restraining Respondent in the manner set forth above and in the manner set forth in Petitioner's Order Granting Temporary Injunction lodged herewith.

5.      That the Court grant such other and further relief as may be just and proper.

6.      That the Court grant expedited consideration to this petition, consistent with 28 U.S.C. § 1657(a) and the remedial purposes of Section 10(j) of the Act.

Dated at New Orleans, Louisiana this _6th_day of November, 2018.

M. Kathleen McKinney, Regional Director
National Labor Relations Board - Region 15
600 South Maestri Place, 7th Floor
New Orleans, LA  70130-3408

By:


_____
Beauford D. Pines
Counsel for Petitioner
National Labor Relations Board, Region 15
600 South Maestri Place, 7th Floor
New Orleans, LA  70130-3408
Telephone: (504) 321-9579
Facsimile: (504) 589-4069
Email address: bpines@nlrb.gov
Louisiana Bar No. 27037

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **M. KATHLEEN McKINNEY, Regional** ) | |
| **Director of  Region 15 of the National Labor** ) | |
| **Relations Board, for and on behalf of the** ) | |
| **NATIONAL LABOR RELATIONS BOARD,** ) | |
| ) | **No.** |
| **Petitioner** ) | |
| ) | |
| **v.** ) | |
| ) | |
| HORSESHOE BOSSIER CITY HOTEL & ) | |
| CASINO ) | |
| ) | |
| **Respondent** ) | |

I hereby certify that on the ___6th___ day of November, 2018, I filed the foregoing documents with the

Clerk of Court for the United States District Court, Western District of Louisiana by using CM/ECF system.

I certify copies of the following documents were served through properly addressed prepaid mail and/or

electronic mail upon each of the individuals listed below:

(1) Civil Cover Sheet (JS-44)

(2) Petition for Temporary Injunction Pursuant to Section 10(j) of the National Labor

Relations Act [29 USC Sec. 160(j))] (with attached Exhibits PX-A - PX-LL and Affidavit of Regional

Director)

(3) Index of Exhibits to Petition for Temporary Injunction

(4) Petitioner's Memorandum of Points and Authorities in Support of Petition for

Temporary Injunction

(5) Order to Show Cause (Proposed)

(6) Order Granting Temporary Injunction (Proposed)

(7) Certificate of Service

COUNSELS FOR HORSESHOE BOSSIER CITY HOTEL & CASINO

CHARLES S. BIRENBAUM, ESQ.
JONATHAN S. SACK, ESQ.
BRENDA L. ROSALES, ESQ.
GREENBERG TRAURIG, LLP
4 EMBARCADERO CTR, STE. 3000
SAN FRANCISCO, CA 94111-5893
*birenbaumc@gtlaw.com*
*sackj@gtlaw.com*
*rosalesb@gtlaw.com*

COUNSEL FOR CHARGING PARTY UAW

AVA BARBOUR, ESQ.
ASSOCIATE GENERAL COUNSEL
INTERNATIONAL UNION, UAW
8000 E. JEFFERSON AVE.
DETROIT, MI 48214
*abarbour@uaw.net*

Dated this *6th* day of November, 2018, at New Orleans, Louisiana.

Beauford D. Pines
Counsel for Petitioner
National Labor Relations Board, Region 15
600 South Maestri Place, 7th Floor
New Orleans, LA  70130-3408
Telephone: (504) 321-9579
Facsimile: (504) 589-4069
Email address: bpines@nlrb.gov
Louisiana Bar No. 27037