UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

M. KATHLEEN McKINNEY,  CIVIL ACTION NO. 18-1450
Regional Director of Region 15
of the National Labor Relations Board,
for and on behalf of the NATIONAL
LABOR RELATIONS BOARD,

VERSUS  JUDGE S. MAURICE HICKS, JR.

HORSESHOE BOSSIER CITY HOTEL  MAGISTRATE JUDGE HORNSBY
& CASINO

**MEMORANDUM RULING**

Before the Court is a Petition/Motion for Temporary Injunction filed by Plaintiff M. Kathleen McKinney on behalf of the National Labor Relations Board (collectively "the NLRB") pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(j), against Defendant Horseshoe Bossier City Hotel & Casino ("Horseshoe"). See Record Document 1. Horseshoe opposes the Petition. See Record Document 38. For the reasons set forth below, the NLRB's motion is hereby **DENIED**.

**I.   BACKGROUND**

This action concerns a petition for temporary injunctive relief by the NLRB in which it alleges that Horseshoe committed various acts, or unfair labor practices ("ULPs"), in violation of the NLRA. See Record Document 1 at 1. While the Petition alleges several ULPs by Horseshoe, which are described herein, the primary act on which the Petition is focused is Horseshoe's termination of one of its employees, Judy Murduca ("Murduca"). See Record Document 36 at 15; Record Document 38 at 10.

Horseshoe is a hotel and casino located in Bossier City, Louisiana and employs approximately 1,400 employees. See Record Document 38 at 9. The primary job

classifications concerned in this action, other than management positions, are table games dealers and Dual Rate Dealer Supervisors ("DRDSs"),[1] the latter of which was the position held by Murduca. See id. at 9–10. The Petition alleges that in early February and March of 2018, Horseshoe engaged in a variety of actions designed to halt and discourage the unionization efforts of some of its employees. See Record Document 1 at 4–5; Record Document 36 at 8. Specifically, the Petition alleges, *inter alia*, that Horseshoe changed terms and conditions of employment to affect employee support for union efforts, made unlawful statements to employees at meetings held to address employees' union activity, discriminatorily applied its non-solicitation and name badge policies against employees involved in union activity, and discriminatorily terminated Murduca in retaliation for her union activities and to discourage other employees from supporting such activities. See Record Document 1 at 5.

In response, Horseshoe wholly refutes the NLRB's claims that any of its alleged actions were motivated by anti-union animus, and that even as alleged in the Petition, all of the alleged acts were one-time occurrences and are not presently ongoing in order to be enjoined. See Record Document 38 at 13, 19. Regarding the alleged ULPs, Horseshoe points to various portions of the record evidence for its position that no employees were negatively affected by the alleged changes, if any, to their conditions of employment, did not make unlawful or coercive statements as the only ones it admits making were statements explaining to employees their potential rights and obligations under a union

---

[1] DRDSs, as described in the record evidence, split their time between supervising table games dealers and dealing in a non-supervisory capacity. See Record Document 36-5 at 75.

contract, and, further, consistently enforced its policies without regard to employees' union involvement. See id. at 11–13, 13–14.[2]

With respect to its discharge of Murduca, Horseshoe asserts that Murduca's termination had nothing to do with her union involvement but rather was based on numerous workplace violations she had committed prior to her involvement with the union, as well as her low performance rating. See id. at 15–18. Additionally, Horseshoe contests the NLRB's assertion that Murduca was the alleged leader of the union's organizing campaign, see id. at 18–19, and, further, offers evidence to dispute the NLRB's related claim that Murduca's termination has discouraged other employees from supporting the union and has effectively "nip[ped] [the] organizing campaign in the bud," id. at 30.

Beginning on December 4, 2018, a six-day hearing was held before a NLRB Administrative Law Judge in which evidence was presented as to the underlying merits of the ULP proceeding, some of which is cited to by the parties for purposes of the instant Section 10(j) Petition. See id. at 7; Record Document 36 at 7. Regarding the NLRB's requested relief, the Petition seeks, *inter alia*, immediate reinstatement of Murduca, a cease-and-desist order to prevent (as alleged) further violations by Horseshoe, and that such order be read to its employees and posted during the pendency of the administrative proceedings so as to reassure employees of their rights. See Record Document 36 at 28–29; Record Document 1-5 at 2–3.

---

[2] For instance, Horseshoe maintains that one of the alleged ULPs in the Petition involving its non-solicitation policy does not warrant injunctive relief because Horseshoe neither punished the employees involved in distributing the flyers nor interfered with later distributions of union literature. See Record Document 38 at 13.

## II. LAW AND ANALYSIS

### A. Standards for Injunctive Relief Under NLRA Section 10(j)

Courts within the Fifth Circuit, along with several other circuits, apply a two-part test to requests for injunctive relief under Section 10(j). See, e.g., McKinney v. Creative Vision Resources, LLC, 783 F.3d 293, 296 (5th Cir. 2015). First, however, the Court notes the relevant statutory language of Section 10(j), which provides as follows:

> The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j). Under the aforementioned test adopted by the Fifth Circuit, Section 10(j) relief is warranted only when (1) "the Board, through its Regional Director, has reasonable cause to believe that unfair labor practices have occurred, and (2) whether injunctive relief is equitably necessary, or, in the words of the statute, 'just and proper.'" Creative Vision, 783 F.3d at 296–97 (quoting Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1188–89 (5th Cir. 1975)).

In Creative Vision, the Fifth Circuit further elaborated on this framework when it incorporated the Third Circuit's explanation of the same two-part test. See id. at 297 (citing Chester v. Grane Healthcare Co., 666 F.3d 87, 98 (3d Cir. 2011)). There, the Fifth Circuit observed that an analysis under this test is informed, in part, by the more traditional four-part test, adopted by the Supreme Court, that courts apply in general requests for equitable relief outside the Section 10(j) context. See id. (noting that Supreme Court

precedent requires that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest" (quoting Winter v. Natural Resources Defense Council, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008))); see also Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 851 (5th Cir. 2010) (stating that equitable principles such as irreparable harm inform the Section 10(j) analysis).[3]

In determining whether reasonable cause exists to believe the Act has been violated, courts may not decide the merits of the case. See Pilot Freight, 515 F.2d at 1191. Instead, courts ask whether the Regional Director's "theories of law and fact are not insubstantial or frivolous." Id. at 1189; Overstreet, 625 F.3d at 850. In addition, courts should not attempt to resolve conflicts in the evidence or the credibility of witnesses in making this determination. See Arlook v. S. Lichtenberg & Co., Inc., 952 F.2d 367, 372–73 (11th Cir. 1992). "Whether reasonable cause exists, of course, depends upon the facts and circumstances of the particular case." Pilot Freight, 515 F.2d at 1189.

Regarding the test's second (and more demanding)[4] requirement that injunctive relief be "just and proper," courts consider two additional principles: (1) whether the employer's alleged NLRA violations and the harm to the employees or union are concrete and egregious or otherwise exceptional; and (2) whether those harms, as a practical

---

[3] Pilot Freight, 515 F.2d at 1192–93 (noting that "[al]though traditional rules of equity may not control the proper scope of § 10(j) relief, some measure of equitable principles come into play").

[4] See Pilot Freight, 515 F.2d at 1192; see also Creative Resources, 783 F.3d at 300–01 (reaffirming requirement from caselaw that "injunctive relief must be affirmatively *more* effective than a decision from the NLRB").

matter, have not yet taken their adverse toll, such that injunctive relief could meaningfully preserve the status quo that existed before the wrongful acts. McKinney v. Creative Vision Resources, LLC, 783 F.3d 293, 298 (5th Cir. 2015). As to the first principle, in determining whether the alleged ULPs are "egregious," the Fifth Circuit holds that "the NLRB must show, and the district court must find, that the unfair labor practice, in the context of that particular case, has caused identifiable and substantial harms that are unlikely to be remedied effectively by a final administrative order from the NLRB." Id. at 299. In addition, the alleged conduct "must lead to exceptional injury, as measured against other unfair labor practices." Id. The caselaw is also clear that "the NLRB's administrative procedures should generally control and that measures to short-circuit the NLRB's processes should be sparingly employed." Id. (quotation omitted).

With respect to the second principle, this Circuit has held that Section 10(j) relief is only appropriate when "any final order of the NLRB would be meaningless and the remedial purposes of the Act will be frustrated without an injunction to preserve the status quo." Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 851 (5th Cir. 2010). Accordingly, injunctive relief should issue only "when harms are ongoing, yet incomplete and likely further to harm the union or its supporters in the workforce." Creative Vision, 783 F.3d at 299. In sum, a district court should only issue Section 10(j) relief "that is necessary and must issue specific findings of fact that suggest harm requiring [such] relief." Overstreet, 625 F.3d at 851.

**B.     Whether the NLRB has Established that Injunctive Relief Is Warranted**

At the outset, the Court first addresses whether the NLRB has satisfied the first requirement that "reasonable cause" existed to believe that ULPs have occurred. Here, it

is arguably a close call whether the NLRB met this requirement with respect to each alleged ULP by Horseshoe. However, for the sake of argument, the Court assumes that this requirement is met because it finds that the test's second requirement that injunctive relief be "just and proper" is clearly not met as to any of the alleged conduct in this case. See infra; see also Kinard v. Dish Network Corp., 890 F.3d 608, 612 (5th Cir. 2018) (noting that only issue on appeal was whether injunctive relief was "equitably necessary" since district court's assumption that reasonable cause existed was not challenged).

Regarding the first "principle" under the test's second step, the NLRB has not met its burden in showing that Horseshoe's alleged conduct and the alleged harm to the employees and union resulting from such conduct are concrete, egregious, or otherwise exceptional. See supra. First, the NLRB's evidence is insufficient to support its claim that Horseshoe's allegedly discriminatory discharge of Murduca has "had an outsize impact" on the other employees and union activity due to Murduca having allegedly been the leader of the union organizing effort. Record Document 1-3 at 25. In fact, the record evidence suggests that Murduca's termination had little, if any, impact on the union activities of other employees. See, e.g., Record Document 38 at 27–28 (citing testimony by Murduca stating herself that "[she is] not the leader of this [organizing effort]," as well as statements by other employees that Murduca's termination had little or no impact on their union involvement). Even if it were accepted that Murduca's discharge had some impact, the alleged violations are not so egregious or "flagrant" enough to warrant injunctive relief, as the cases have held. Fleishut v. Avondale Industries, No. 94-3500, 1995 WL 27464, at *5 (E.D. La. Jan. 23, 1995) (concluding that, despite its finding that the reasonable cause requirement was met, the employer's actions "[were] not flagrant

enough, in light of the size of [its] work force and its routine policies and procedures, to constitute egregious violations of the Act").

Nor does the evidence warrant a finding that the other alleged violations by Horseshoe are egregious or otherwise exceptional. Regarding its alleged unlawful changes to terms and conditions of employment, even if it is assumed that reasonable cause existed to believe such changes constituted ULPs, it can hardly be said that such changes meet the "egregious" standard required for injunctive relief, especially considering that none of the changes negatively affected the employees' pay or benefits they were currently receiving. See Record Document 38 at 11–12. Likewise, the alleged statements made by Horseshoe's management do not rise to the level of "egregious" violations, and the NLRB has failed to show what, if any, "identifiable and substantial harms" have resulted from such statements. Id. at 14–15; see, e.g., Record Document 36-2 at 265.

Regarding the second principle under the test's "just and proper" prong, it is equally clear from the record that none of the alleged violations by Horseshoe necessitate the issuance of injunctive relief in order to "preserve the status quo." See supra. First, with respect to the NLRB's request that Murduca be reinstated, the caselaw is clear that the issue of reinstatement is "generally left to the administrative expertise of the Board." Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1192 (5th Cir. 1975); Malone v. Carpet Transport, Inc., No. 89-2588, 1989 WL 106479, at *4 (E.D. La. Sept. 12, 1989) ("The fact that a union negotiator has been terminated, absent evidence of a pattern of such activity by the employer or proof of a deterrent effect on other employees, is insufficient to entitle the petitioner to injunctive relief."). Further, as noted above, the evidence does not support

the NLRB's claim that Murduca's termination "effectively nip[ped] an organizing campaign in the bud." Record Document 1-3 at 24.

In addition, none of the other alleged violations by Horseshoe warrant immediate injunctive relief as none are currently ongoing and the evidence does not suggest that such violations are likely to harm the employees or union in the future. See Record Document 38 at 19. For example, nearly all of the alleged unlawful statements by Horseshoe's management were made at meetings that took place in March of 2018 or earlier and have not reoccurred since that time. See id. at 30; Record Document 36-1 at 87. Regarding Horseshoe's alleged discriminatory enforcement of its policies, such as its name badge and non-solicitation policies, both of the alleged violations concerning these policies did not result in any significant punishment, if any, and were also one-time occurrences. See Record Document 36-1 at 166.

Lastly, the Court notes that while Horseshoe terminated Murduca on April 7, 2018, see Record Document 38 at 17, the NLRB did not file its petition for injunctive relief until November 6, 2018, approximately seven months later. See Record Document 1; Record Document 38 at 30. The caselaw has held that such a delay in seeking relief is a factor that weighs against issuing an injunction under Section 10(j) as it is evidence that the ULP's alleged detrimental effect has already taken its toll, rendering it too late to try to preserve the status quo. Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of reinstatement of two discharged employees where "[t]he Board waited three months before petitioning the district court for temporary relief"). Moreover, the NLRB's delay in seeking an injunction weakens its claim that such

relief is necessary or that Murduca's reinstatement must be "immediate." Record Document 36 at 28.

III. **CONCLUSION**

The Court finds that the NLRB has not shown that Section 10(j) relief is warranted in the present action. Therefore, based on the foregoing reasons, the NLRB's Petition/Motion for Temporary Injunction (Record Document 1) is hereby **DENIED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of April, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT